# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-cr-20018-JTF-tmp |
| | ) | |
| **ALBERT DAJUAN WHITE,** | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Before the court by order of reference is defendant Albert Dajuan White's Motion to Suppress, filed on June 26, 2014. (ECF No. 30.) The government responded in opposition on July 2, 2014. (ECF No. 31.) White filed a supplement to his motion on July 31, 2014. (ECF No. 38.) The government responded in opposition to the supplemental motion on August 4, 2014. (ECF No. 41.) On August 6, 2014, the court held a suppression hearing. The government called Investigator Brandon Williams of the Tipton County Sheriff's Office ("TCSO") as its only witness. White did not call any witnesses. The court received into evidence a transcript of the December 3, 2013 preliminary hearing conducted in White's state court case involving the same underlying facts as the instant case; the search warrant and affidavit for the search executed at 196 Turner Lane in

Covington, Tennessee; and an audio-video recording of the undercover sale of marijuana that resulted in Investigator Williams obtaining the search warrant.[1]

For the reasons below, it is recommended that the motion to suppress be denied.

## I. PROPOSED FINDINGS OF FACT

On October 4, 2013, Investigator Brandon Williams was contacted by a confidential source ("CS") who told the investigator that the CS knew Albert White, that the CS had purchased marijuana from White previously, and that the CS could buy marijuana from White again.[2] Although Investigator Williams had not previously used this particular CS, he believed the information was reliable based on his (Investigator Williams's) prior knowledge of White's involvement with selling narcotics, including a criminal history that included narcotics charges. Investigator Williams decided to set up an undercover drug transaction for the next day, October 5, which would entail the CS purchasing marijuana from White while being monitored.[3] In

---

[1] The suppression hearing was originally scheduled for July 31, 2014, but was continued to August 6 upon White's motion to allow him to obtain the transcript of his preliminary hearing conducted in state court in order to support his supplement to his motion to suppress.

[2] Investigator Williams has been with the TCSO since December 2001 and has worked as a narcotics investigator for four years.

[3] Investigator Williams testified that he could not recall whether the CS had pending charges at the time of the undercover

preparation for the undercover buy, Investigator Williams searched the CS and the CS's vehicle, and found no contraband. Investigator Williams provided the CS with recorded funds, placed an audio recording device on the CS, and installed a video recording device inside the CS's vehicle. Investigator Williams, driving in his own vehicle, then closely followed the CS as the CS drove to White's residence, located at 196 Turner Lane in Covington, Tennessee. Before reaching White's residence, Investigator Williams turned into a driveway three houses down from 196 Turner Lane. Investigator Williams exited his vehicle and watched the CS pull into the driveway at 196 Turner Lane and park next to a white Chevrolet truck. About a minute later, Investigator Williams saw the Chevrolet truck pull out of the driveway, turn left, and drive past him. Investigator Williams recognized White as the driver of the truck. Investigator Williams then followed the CS back to the location where they had originally met, at which time the CS turned over to Investigator Williams a baggie of marijuana. Investigator Williams retrieved the audio and video recording equipment.

---

transaction or if the CS had any agreement with state prosecutors. Investigator Williams testified that the CS was paid for participating in the undercover transaction.

Immediately following the undercover buy, Investigator Williams returned to his office and watched the recording on his computer.[4] After viewing the recording, Investigator Williams drafted an affidavit for a search warrant for 196 Turner Lane. The affidavit stated, in relevant part, as follows:

> Investigator Brandon Williams received information that marijuana was being sold from 196 Turner Lane in Covington, TN 38019 in Tipton County, TN by a black male identified as Albert Dajuan White. Investigator Brandon Williams initiated a controlled purchase of marijuana with the use of a confidential source from the residence. Investigator Brandon Williams placed audio and video on the confidential source. The confidential source then proceeded to 196 Turner Lane in Covington, TN, Tipton County, TN. Investigator Brandon Williams observed the confidential source pull into the driveway of 196 Turner Lane in Covington, TN 38019 in Tipton County, TN and pull up next to a white Chevrolet truck where Albert White gave the confidential source the marijuana for the previously recorded drug fund money. Investigator Brandon Williams then observed the white Chevrolet truck leave the residence with Albert White driving the vehicle. The confidential source then left the residence and met with Investigators where the marijuana was recovered. The transaction was captured on audio and video device. This incident occurred in Tipton County, TN in the last seventy-two hours. A sudden and forceful entry is clearly necessary for the safety of Deputies, residents, or other nearby persons or property due to Albert White's extensive criminal history consisting of Evading Arrest, Resisting arrest, and numerous possessions of

---

[4]The audio-video recording was played during the suppression hearing. The recording showed the CS driving to a location and then stopping the vehicle. The recording showed the CS rolling down the driver's side window and engaging in a conversation with an individual who is not visible on the recording. The recording showed the CS retrieving a baggie from this individual and after a brief conversation, driving away from the location.

> SCH II and VI. Albert is also known to have dogs
> believed to be pit bulls at his residence.

Investigator Williams had the affidavit approved by his lieutenant, contacted Fayette County Circuit Court Judge Webber McGraw, and met Judge McGraw at his residence, where he signed the search warrant. The warrant authorized a search of 196 Turner Lane for marijuana and any other illegal contraband, drug paraphernalia, drug proceeds, and materials used in the weighing and processing of illegal narcotics for distribution.

Two days later, on October 7, 2013, Investigator Williams and other TCSO officers executed the search warrant. During the search of the premises, law enforcement officers located approximately 484 grams of marijuana; drug paraphernalia, including sandwich bags and a digital scale; a .40 caliber Ruger pistol; a box of .40 caliber ammunition; and $32,240 in cash, including money used in the undercover drug purchase. The white Chevrolet truck Investigator Williams had seen during the undercover purchase was on the premises and registered to White. White, who was present at the residence during the search, was arrested and taken into police custody. Following his arrest, White gave a statement to the TCSO deputies in which he admitted to selling marijuana and to possessing the firearm.

On January 30, 2014, a federal grand jury indicted White on one count of being a felon in possession of a firearm in

violation of 18 U.S.C. § 922(g)(1); one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1); one count of possessing marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1); and one count of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

In his motion to suppress, White seeks to suppress all evidence obtained as a result of the search warrant executed at 196 Turner Lane, including White's post-arrest statement.[5] White argues that the search warrant affidavit failed to establish probable cause that contraband would be found inside the residence based on the drug transaction that occurred in the driveway, the affidavit failed to establish the reliability of the CS, and the good-faith exception established in United States v. Leon, 468 U.S. 897 (1984), should not apply.[6] White additionally argues in his supplemental motion to suppress that the search warrant affidavit contained false information, thus entitling him to a hearing under Franks v. Delaware, 438 U.S. 154 (1978).

---

[5] White's argument for suppressing his post-arrest statement is based solely on the fruit of the poisonous tree doctrine, i.e., that the statement was obtained as a result of the unlawful search. See Wong Sun v. United States, 371 U.S. 471, 491 (1963); see also Brown v. Illinois, 422 U.S. 590, 603 (1975).

[6] White also argued in his motion that Judge McGraw did not have authority to issue the warrant. However, at the suppression hearing, White withdrew this argument.

## II. PROPOSED CONCLUSIONS OF LAW

**A. Motion for a Franks Hearing**

In Franks, the Supreme Court held that a search based on a warrant that contains deliberately or recklessly false allegations is invalid unless the remaining portions of the affidavit provide probable cause. "A Franks hearing is an evidentiary hearing during which defendants are allowed to present evidence concerning the veracity of the challenged statements in the search warrant affidavit." United States v. Kelley, 596 F. Supp. 2d 1132, 1149 (E.D. Tenn. 2009) (citing United States v. Keszthelyi, 308 F.3d 557, 566-68 (6th Cir. 2002); United States v. Jenkins, 728 F.2d 396, 397 (6th Cir. 1984)). "To obtain a Franks hearing, the movant must provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with reckless disregard for the truth. The movant must *also* show that the allegedly false statements were necessary for the magistrate's determination of probable cause." United States v. Mastromatteo, 538 F.3d 535, 545 (6th Cir. 2008).

The court finds that White has not made a substantial preliminary showing that a false statement was even made, much less one that was made knowingly or intentionally, or with reckless disregard for the truth. First, White argues that the statement "Investigator Brandon Williams initiated a controlled

purchase of marijuana with the use of a confidential source from the residence" was false, because the CS was not "from the residence." The "from the residence" phrase, however, when read in conjunction with the preceding sentence, describes where the controlled purchase of marijuana was to take place, not where the CS lived. Second, White argues that the following sentence was false: "Investigator Brandon Williams observed the confidential source pull into the driveway of 196 Turner Lane . . . and pull up next to a white Chevrolet truck where Albert White gave the confidential source the marijuana for the previously recorded drug fund money." White asserts that although Investigator Williams observed the CS pull into the driveway, he did not observe White give the CS marijuana or receive any of the buy money. However, although Investigator Williams could not see White hand to the CS the baggie of marijuana at the scene, he did see the CS pull into White's driveway next to a Chevrolet truck, he recognized White as the driver of the truck as he drove away, he retrieved a baggie of marijuana from the CS after the transaction, and he watched the recording which showed the CS receiving the drugs through the driver's side window at 196 Turner Lane. Based upon his personal observations, Investigator Williams's statement that he observed White give the CS marijuana was a true statement. Third, White argues that the statement "[t]he transaction was

captured on an audio and video device" was false, because White is not visible on the video recording. This argument is without merit because the hidden audio and video recording devices did capture the transaction, and the fact that White is not seen on camera does not make the statement false.

The court finds that none of these statements were false. Therefore, it is recommended that White's motion for a Franks hearing be denied.

**B. Motion to Suppress**

1. Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To determine if probable cause exists, the task of the issuing judicial officer is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Kinison, 710 F.3d 678, 682 (6th Cir. 2013). "The standard of review for the sufficiency of an affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the

evidence would be found at the place cited.'" United States v. Greene, 250 F.3d 471, 478 (6th Cir. 2001) (quoting United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991)); see also United States v. Ugochukwu, 538 F. App'x 674, 678 (6th Cir. 2013). Search warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny. United States v. Woosley, 361 F.3d 924, 926 (6th Cir. 2004). Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005).

White argues that the affidavit supporting the search warrant failed to establish probable cause because there was no nexus between the place to be searched and the evidence sought. White argues that the affidavit did not allege that White resided at 196 Turner Lane and did not allege that any criminal activity took place inside the house. An affidavit offered in support of a search warrant "must indicate a nexus between the place to be searched and the evidence sought." United States v. Buis, 678 F. Supp. 2d 665, 672 (E.D. Tenn. 2009) (quoting United States v. Hawkins, 278 F. App'x 629, 634 (6th Cir. 2008)). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for

and seized are located on the property to which entry is sought." United States v. Brooks, 594 F.3d 488, 492-93 (6th Cir. 2010) (quoting United States v. Frazier, 423 F.3d 526, 532 (6th Cir. 2005)).

The affidavit in this case sufficiently established a nexus between 196 Turner Lane and the evidence sought. The affidavit stated that Investigator Williams received information that marijuana was being sold from 196 Turner Lane by White,[7] the investigator observed the CS purchase marijuana from White from the driveway of the residence, the transaction was recorded, White had a criminal history that included possession of drugs, and White had pit bulls at his residence. Thus, although the affidavit did not expressly state that White resided at 196 Turner Lane, the strong implication was that he lived there. The search warrant signed by the issuing judge identified the place to be searched as being occupied by White. "[A]n issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking." United States v. Williams, 544 F.3d 683, 687 (6th Cir. 2008); see also United States v. Ellison, 632 F.3d 347, 349 (6th Cir. 2011) (concluding that issuing judge could infer that there was a fair

---

[7]Although Investigator Williams in his affidavit did not state that the information he received regarding White selling drugs from 196 Turner Lane was information he obtained from the CS, a fair reading of the affidavit would lead one to conclude that the information was obtained from the CS.

probability that drugs were being sold inside the residence, where informant observed defendant conduct a drug transaction outside of the residence).

Moreover, "a single controlled purchase is sufficient to establish probable cause to believe that drugs are present at the purchase location." United States v. Archibald, 685 F.3d 553, 558 (6th Cir. 2012); see also Ellison, 632 F.3d at 349 (search warrant valid where probable cause based on single drug transaction in which informant observed "Short" exit the residence, "Red" and "Short" engaged in drug transaction outside of the residence, and "Short" re-entered the residence); United States v. Henry, 299 F. App'x 484, 485 (6th Cir. 2008) (single undercover drug transaction inside of residence provided probable cause to support search warrant for residence); United States v. Jackson, 470 F.3d 299, 307-08 (6th Cir. 2006) (search warrant valid where probable cause to search house was based on single undercover drug transaction with confidential informant on the porch of defendant's residence); United States v. Pinson, 321 F.3d 558, 564-65 (6th Cir. 2003) (single undercover drug purchase from inside of defendant's residence provided probable cause to issue search warrant for residence).

White next argues that the search warrant was not supported by probable cause because Investigator Williams did not establish that the CS was credible or reliable. When the

affidavit presented in support of a search warrant is based upon information obtained from a confidential informant, the court must "consider the informant's veracity, reliability, and 'basis of knowledge.'" United States v. Rodriguez-Suazo, 346 F.3d 637, 646 (6th Cir. 2003) (quoting United States v. Smith, 182 F.3d 473, 477 (6th Cir. 1999)); see also Gates, 462 U.S. at 230.  An affidavit that "supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." United States v. Smith, 337 F. App'x 500, 504 (6th Cir. 2009) (quoting Jackson, 470 F.3d at 307).  Indeed, "in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." Frazier, 423 F.3d at 632.  "This corroboration can be established by a police-monitored controlled purchase." Id. (citing United States v. Coffee, 434 F.3d 887, 894 (6th Cir. 2006)).

Although Investigator William's affidavit did not attest to the reliability of the CS, he independently corroborated the information through the undercover drug purchase.  The affidavit in this case is similar to the affidavit supporting the search warrant in United States v. Henry, 299 F. App'x 484.  In Henry, a law enforcement officer submitted the following affidavit:

> My name is Steve Reece and I have been a sworn law
> enforcement officer since 1991. I have participated in
> narcotics enforcement since 1994 and was assigned to
> the North Sector Crime Suppression Unit in February of
> 2004. Within the last 72 hours, a reliable CI was
> searched and given previously photocopied buy money by
> Officer McCormack and directed to go to 2414 25th
> Avenue North. Said CI went directly to the residence,
> knocked on the door, unknown subject answered the door
> CI [sic] went inside the location, stayed momentarily.
> The CI returned back to the CI's vehicle and was
> followed by undercover officers to an undisclosed
> location where the CI gave Under cover [sic] officer a
> plastic baggie with cocaine inside, which tested poss.
> For Cocaine Base [sic]. CI was searched again, Police
> did not find any contraband. Said CI is familiar with
> said narcotic from previous experience exposure [sic].
> Said CI wishes to remain anonymous for fear of
> reprisal.

Id. at 485. Based on that affidavit, the search warrant was signed and executed, and officers found contraband at the apartment. Id. The defendant later moved to suppress the evidence, arguing that the warrant was not supported by probable cause. Id. The court noted that the affidavit lacked any support for the characterization of the CI as "reliable," but concluded that, under the totality of the circumstances, the single controlled purchase described in the affidavit was sufficient independent corroboration of the CI's information. Id. at 486 n.4, 487-88 (citing Hawkins, 278 F. App'x at 635; Jackson, 470 F.3d at 307). Similarly, Investigator Williams's affidavit established that the CS was wired for audio and video

- 14 -

monitoring,[8] the investigator observed the CS meet with White in the driveway of 196 Turner Lane and later confirmed through the audio-video recording that White in fact provided drugs to the CS, he saw White leaving the scene in the Chevrolet truck, and he retrieved the marijuana from the CS immediately after the buy. Based on the totality of the circumstances, the court finds that the single controlled purchase was sufficient independent corroboration of the confidential informant, and therefore, the search warrant was supported by probable cause.

2. Good-Faith Exception

Even if the affidavit lacked probable cause, however, the good-faith exception to the exclusionary rule would apply and result in a denial of the motion to suppress. As recently explained by the Sixth Circuit Court of Appeals:

> If an affidavit lacks probable cause, "[t]he Supreme Court has recognized an exception to the exclusionary rule where 'the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate . . . .'" United States v. Watson, 498 F.3d 429, 431 (6th Cir. 2007) (quoting Massachusetts v. Sheppard, 468 U.S. 981, 987-88, 104 S. Ct. 3424, 82 L.Ed.2d 737 (1984)). This is known as the good-faith exception. Id. In determining whether an officer had good faith, this Court looks to whether the officer would have known that the search was illegal, despite the magistrate's authorization. United States v. McPhearson, 469 F.3d 518, 525 (6th Cir. 2006) (quoting United States v. Leon, 468 U.S. 897, 922-23, 104 S.

---

[8] The affidavit in Henry did not mention whether law enforcement monitored the undercover purchase with a listening device. Id. at 487.

- 15 -

> Ct. 3405, 82 L.Ed.2d 677 (1984)). However, the good-faith exception does not apply to affidavits so lacking indicia of probable cause that a belief in the existence of probable cause would be objectively unreasonable. United States v. Laughton, 409 F.3d 744, 748 (6th Cir. 2005) (citing Leon, 468 U.S. at 914-23, 104 S. Ct. 3405). An affidavit lacks the requisite indicia of probable cause if it is a "bare-bones" affidavit. See Laughton, 409 F.3d at 748. The inquiry into whether an affidavit is so bare bones as to preclude application of the good-faith exception is a less demanding inquiry than the one involved in determining whether an affidavit provides a substantial basis for the magistrate's conclusion of probable cause. Id. at 748-49. The bare-bones inquiry requires examination of the affidavit for particularized facts that indicate veracity, reliability, and basis of knowledge and that go beyond bare conclusions and suppositions. Id. at 748.

United States v. Rose, 714 F.3d 362, 367 (6th Cir. 2013). The Leon good-faith exception will also not apply when the issuing judge was misled by false information; the issuing judge abandoned his or her neutral judicial role; or the warrant was so facially deficient that it could not reasonably be presumed valid. United States v. Hodson, 543 F.3d 286, 292 (6th Cir. 2008) (listing the four exceptions to the good-faith exception).

The court concludes it was reasonable for Investigator Williams and TCSO officers to rely on the issuing judge's determination of probable cause. As discussed above, the affidavit supporting the search warrant contains no false information. There is no evidence that the issuing judge abandoned his neutral and detached role in signing the search warrant. Finally, Investigator Williams's affidavit was not

bare bones or facially deficient – it provided sufficient details of the CS's information and the corroborating controlled purchase initiated by Investigator Williams. Therefore, the court concludes the good-faith exception applies and recommends that White's motion to suppress be denied on this alternative basis. See, e.g., United States v. Neal, No. 13-5875, 2014 WL 4057832, at *12-13 (6th Cir. Aug. 18, 2014) (concluding that the good-faith exception should apply when defendant had failed to make even a preliminary showing that false statements had been included in the affidavit; no evidence had been presented as to the issuing judge's neutrality; officer "did corroborate enough specific facts . . . to establish a minimal nexus between the place to be searched and the potential for criminal activity"; and the warrant was not so facially deficient that the executing officers could not reasonably presume it to be valid); United States v. Cunningham, 995 F. Supp. 2d 812, 819 (N.D. Ohio 2014) (finding that good faith exception would apply to affidavit that was not bare bones because it contained CI's information, details of two controlled buys, and the officer had stated his experience led him to believe evidence of drug trafficking would be found at the residence).[9]

---

[9]White also argues that the good-faith exception should not apply because the affidavit did not provide a time or date of the undercover drug transaction, and "therefore there is nothing in the affidavit that shows whether the information provided by the

## III. RECOMMENDATION

For the above reasons, the court recommends that White's motion to suppress be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

September 22, 2014
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

criminal informant was stale." This argument is without merit. The affidavit stated that the undercover transaction occurred within "the last seventy-two hours," which was a factually true statement.